443 F.Supp. 1225 (1977)
WESTINGHOUSE ELECTRIC CORPORATIONRESEARCH AND DEVELOPMENT CENTER, Plaintiff,
v.
Harold BROWN, Secretary, Department of Defense, F. Ray Marshall, Secretary, Department of Labor, Weldon J. Rougeau, Director, Office of Federal Contract Compliance Programs, Lt. Gen. Woodrow W. Vaughan, United States Army, Director, Defense Logistics Agency (formerly known as Defense Supply Agency), Richard A. Levin, Chief, Plans and Analysis Division, Directorate of Contractor Employment Compliance, Defense Logistics Agency, Defendants.
Civ. A. No. 77-604-A.
United States District Court, E. D. Virginia, Alexandria Division.
December 30, 1977.
*1226 *1227 Denis D. McKenna, Fairfax, Va., Gary L. Goldberg, Pittsburgh, Pa., for plaintiff.
Elsie L. Munsell, Asst. U. S. Atty., Alexandria, Va., for defendants.

OPINION AND ORDER
CLARKE, District Judge.
Plaintiff, Westinghouse Electric Corporation, brings this "reverse" Freedom of Information Act suit pursuant to 5 U.S.C. § 552, 18 U.S.C. § 1905, 42 U.S.C. § 2000e-8(e); 44 U.S.C. § 3508. Jurisdiction is alleged under 5 U.S.C. § 702; 28 U.S.C. § 1331 and 28 U.S.C. § 1337.
After a hearing on August 8, 1977, this Court granted plaintiff's motion for a temporary restraining order, enjoining the defendants from releasing the information in controversy to anyone other than authorized governmental agencies and the plaintiff until plaintiff's claim for declaratory and permanent injunctive relief could be heard and decided. The hearing on the preliminary injunction was consolidated with that on permanent relief and the case was tried on September 26, 1977. At trial plaintiff introduced the disputed documents after it was agreed their confidentiality would be maintained until the Court made its decision. The information in issue is contained in five documents denominated at trial as defendants' Exhibit # 1 (A through E) and consisting of: A) Westinghouse's 1976 Affirmative Action Plan (AAP) for its research and development center in East Pittsburgh, Pennsylvania; B) AAP support data including a detailed work force analysis contained in a computer printout; C) correspondence between Westinghouse and the Defense Logistics Agency (DLA) and the Office of Federal Contract Compliance Programs (OFCCP) delineating the parties' positions on the disclosability of the AAP and related data; D) an analysis of 1975 accomplishments in meeting affirmative action goals; E) a Standard Compliance Review Report Form (SCRRF) completed on April 4, 1976, and the notes of the Equal Opportunity Specialist (EOS) who made out this SCRRF.
At trial the employment manager of the research and development center testified for Westinghouse as did three expert witnesses. Harriet Ehrlich, employed by the requester of the information, the Pennsylvania Human Relations Commission, testified for the defendants and the testimony of defendants' expert witness, Dr. Sar Levitan, was introduced by way of a deposition taken on September 21, 1977.
After both sides had presented their evidence, this Court continued the temporary restraining order in effect, with the consent of the parties, until additional briefs had been submitted and the Court had the opportunity to prepare an opinion and final order as to all the issues involved.

Background
On March 21, 1977, Westinghouse was informed by a representative of the Defense Contract Administrative Services Region (DCASR), Philadelphia Regional Office, that DCASR had received a request from the Pennsylvania Human Relations Commission for information regarding recent compliance reviews of the Westinghouse research and development center. At this time, Westinghouse was informed that the AAP for the center, including the work force analysis by division and related statistical data, would be made available to the state commission. An exchange of correspondence regarding the impending release of information then occurred between Westinghouse and the DLA and OFCCP. In a letter dated April 7, 1977, Richard J. Levin, Chief of the Plans and Analyses Division *1228 of the Contractor Employment Compliance Directorate of DLA agreed to delete from the data the names, salaries, Social Security numbers and other personal information pertaining to Westinghouse employees.
This personnel data, to be deleted by the DLA, would, according to a letter of July 19, 1977 from OFCCP, remain undisclosed although OFCCP did recommend at that time that DLA reconsider its decision and allow this information to be released. However, Weldon J. Rougeau, Director of OFCCP, did agree to further delete: the names of departments and their identifying code numbers appearing on the top lefthand side of each sheet of the computer printed work force analysis; paragraph I(6) on page 2 of the AAP; and the attachment entitled "Profile: Westinghouse Research Laboratories."
Westinghouse proceeded to administratively contest disclosure and the appeals process was exhausted on July 19, 1977, when in a letter referred to above, the OFCCP notified Westinghouse that the requested material with those deletions already stated would be released. The DLA and the Department of Labor agreed not to disclose the disputed information until Westinghouse's application for judicial relief could be heard. On August 8, 1977, Westinghouse commenced this action and a temporary restraining order was issued by this Court.

I.
Although plaintiff initially advanced a great number of legal theories to support its demand for nondisclosure, after oral argument and extensive briefing, plaintiff's final position appears to be that the information in dispute is exempt under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(4), (6) and that disclosure of this data is therefore barred under the FOIA and under 18 U.S.C. § 1905.[1]
The FOIA mandates the disclosure by every agency of agency rules, opinions, orders, records and proceeding, 5 U.S.C. § 552(a). With certain exceptions, not applicable here, an "agency" is considered to be each and every authority of the United States Government. 5 U.S.C. § 551(1). Exempt from the provisions of the FOIA are nine categories of information, 5 U.S.C. § 552(b)(1)-(9), two of which are relevant here: 1) "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4); and 2) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).
Plaintiff does not claim under the 552(b)(4) exemption that the information here in dispute contains trade secrets or that it is privileged. It does assert that the data comprises confidential commercial and financial information within the meaning of the FOIA. The most authoritative interpretation of the (b)(4) exemption appears in National Parks and Conservation Association v. Morton, 162 U.S.App.D.C. 223, 228, 498 F.2d 765, 770 (1974), where the Court of Appeals held:
. . . commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is *1229 likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.
To support its contention that disclosure of the disputed information was likely to cause substantial harm to Westinghouse's competitive position, plaintiff introduced extensive expert testimony. The thrust of plaintiff's case was that the total number of minority and female engineers and laboratory technicians was extremely small; that Westinghouse does business in several highly competitive industries and that the competition to hire minority and female research and development employees to meet affirmative action goals is particularly intense. Plaintiff introduced evidence showing that "raiding"the hiring away by a competitor of valuable employeeswas a common practice in industrial research and development and that in the context of minority and female workers such raiding could harm Westinghouse by depriving it of such highly sought-after personnel while simultaneously affording them to a competitor. Plaintiff presented evidence that this was especially harmful to the raided party since minority and female employees were not only more difficult to recruit but often required more initial training and orientation than non-minority males. A further potential for harm was said to exist in that a raided employee carries to the new employer expertise and information concerning the research being conducted at the former job.
In addition to employee raiding, plaintiff introduced testimony that the release of the workforce analysis with its detailed departmental breakdown would indicate to competitors Westinghouse's research strengths and weaknesses. Plaintiff's witnesses emphasized the advantages such information would give a competitor in regard to research planning, strategy for bidding on contracts and in defensive research and development. The potential for "vacuum cleaner" raiding, that is, the hiring away of whole departments, task forces or research groups was stated to be greatly increased by the release of data such as that contained in the disputed documents.
A further potential for harm was claimed by plaintiff to exist in the area of personnel management. Since some of the data in the AAP indicates the promotion potential of individuals within particular departments and job classifications, it was asserted that making this data accessible to employees would cause morale problems which would result in the employees losing interest in doing an efficient job, and in some cases causing the employee to seek greener pastures with a competitor.
Defendants introduced expert testimony by deposition. They did not dispute the highly competitive nature of the industries in which Westinghouse conducted business, nor did they deny that minority and female employees in industrial research and development were scarce and much sought after, nor that raiding frequently took place. Defendants did deny that the information sought to be released would in any significant way harm Westinghouse in hiring and retaining minority and female employees. Defendants also denied that data appearing in the workforce analysis could give a competitor any clear indication of which technologies Westinghouse was spending its research budget to develop. Lastly, defendants denied that the promotability data would harm employee morale or inform employees of any fact of which they weren't already fully aware.

II.
Plaintiff's expert witnesses, especially Sanford Rose, a professional recruiter, and Dr. David Rutenberg, a specialist in strategic planning and competitive analysis, established to the Court's satisfaction the high probability of competitive harm to Westinghouse should the data in question be released. Although it is clear that very little of the information would be helpful to a competitor per se, in combination with other information, it would be highly useful. *1230 The availability of such other information, usable in conjunction with the AAP and related documents was sufficiently demonstrated by plaintiff's evidence. On the other hand, defendants' expert, Dr. Sar Levitan, while qualified as an economist, showed little expertise in the specific areas involved here: recruitment of highly qualified professionals, strategic planning, industrial espionage, organizational behavior and personnel management. His testimony consequently was given considerably less weight by the Court than that accorded plaintiff's experts.
After considering all the evidence, the Court finds as a fact that a large amount of the data in the AAP, the work-force analysis, the 1975 analysis of accomplishments, and the Standard Compliance Review Report Form (SCRRF) and Employment Opportunity Specialists' (EOS) notes would increase the potential for raiding, provide competitors with an analysis of the allocation of Westinghouse's research budget and increase to a significant degree employee morale problems through dissemination, and possible misunderstanding and distortion of promotability surveys. These results would be likely to cause substantial harm to the competitive position of Westinghouse. The precise portions of the documents that have a potential for harm will be detailed later in this opinion but they may be characterized in general as those parts of the documents dealing with professional and skilled personnel and with the departments of the East Pittsburgh facility directly involved in industrial research and development. The release of data relating to departments contributing only support functions to the research and development departments, as well as information dealing with lower echelon and blue collar personnel and job categories, will not be affected as the evidence was of insufficient weight to show plaintiff would be likely to sustain substantial competitive harm from the publicizing of information relating to these areas.
Section 552(b)(4), as construed in National Parks and Conservation Association v. Morton, supra, also exempts information which if disclosed would be likely to impair the Government's ability to obtain necessary information in the future. Plaintiff has advanced the likely harm to the Government's information-gathering capabilities as a further reason for non-disclosure. The Court has serious doubts as to plaintiff's standing to raise the Government's interest in non-disclosure. But even if it is assumed that such standing exists, the fact that the Government agency involved is willing to disclose the information and that the information is supplied mandatorily under Executive Order 11246, and OFCCP Regulations, 41 C.F.R. § 60-1.7, clearly indicates that the governmental interest portion of the (b)(4) exemption is not applicable here. See, National Parks and Conservation Association v. Morton, supra, at 770; Burroughs Corporation v. Schlesinger, 403 F.Supp. 633, 637 (E.D.Va.1975); Hughes Aircraft v. Schlesinger, 384 F.Supp. 292, 296 (C.D.Cal.1974).
A finding that the data in question qualifies under a 552(b) exemption is, however, only the first step in determining whether non-disclosure should be ordered. "So far as exempt information is concerned the Act, in the ordinary situation `neither authorizes [n]or prohibits the disclosure of such information,' and the disclosure of such exempt information is ordinarily discretionary with the agency." Westinghouse Electric Corp. v. Schlesinger, 542 F.2d 1190, 1197 (4th Cir. 1976), cert. denied sub nom. Brown v. Westinghouse Electric Corp., 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977), quoting from, Charles River Park "A" Inc. v. Department of H. & U. D., 171 U.S.App.D.C. 286, 519 F.2d 935, 942 (1975).
The exercise of this discretionary power is limited by the restraints imposed by other "statutes, rules and regulations," Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore, 508 F.2d 945, 950 (4th Cir. 1974), and by any "clear declaration of legislative policy against disclosure as reflected in an exemption of the Act itself." Westinghouse Electric Corp. v. Schlesinger, supra at 1197. In the last cited case, the Court of *1231 Appeals further elaborated the rights of a supplier of information to prevent an agency from releasing such information when disclosure would violate either the FOIA or another statute (at 1209-10, 1214):
. . . jurisdiction, it would seem, would exist both as an action to enjoin the violation of the positive mandate of § 1905 by an executive officer and as an action implied under the very terms of Exemption 4 of the FOIA itself. Both such grounds would rest on a federal statute and qualify under § 1331.
It would be a violation of both logic and reason to find that an action by one who is faced with substantial competitive harm and injury by the threat of disclosure of information, submitted by him solely because of the compulsion of a federal Executive Order, validly issued under federal law by a federal agency, whose officers are forbidden by federal law to disclose such information (as does § 1905), is not an action arising "under the . . . laws, . . . of the United States." It has been well stated that "[i]t is an inherent power of the federal judiciary to enjoin . . . an act" sought to be carried out by a federal official in violation of federal law, and "[t]hat there is such [judicial] power was one of the prime compelling reasons for the creation of the judicial branch as an independent and equal branch of Government." And this power of a federal court to grant injunctive and declaratory relief under § 1331 against the threat of action by a public officer "in excess of [his] delegated powers and contrary to a specific [federal statutory] prohibition" such as § 1905, causing irreparable harm to a private person, has been repeatedly recognized and exercised. The principle is plainly applicable in actions such as these under review and affords federal subject-matter jurisdiction under § 1331(a).
We accordingly have, as we have said, no difficulty in finding that the District Court had jurisdiction of these actions under § 1331 to enjoin an action by the defendants in violation of § 1905.
Should, however, the contention of the defendants be accepted that § 1905 is inapplicable, the FOIA itself, it would seem, confers on a supplier of private information, an implied right to invoke the equity jurisdiction to enjoin the disclosure of information within Exemption 4.
. . . . .
In our opinion, federal-question jurisdiction does exist for an implied action by the private party to protect his right to protection from disclosure, stated as a general overall legislative policy in Exemption 4 of the FOIA. (emphasis in original, footnotes omitted).
In this Circuit it is clear therefore: 1) that an agency's discretionary power to disclose such information as is here in dispute is restrained both by another statute in the form of 18 U.S.C. § 1905 and by the clear declaration of legislative policy against disclosure embodied in exemption (b)(4) itself; 2) that a supplier of information exempt under (b)(4) has an implied right of action to enjoin disclosure under both 18 U.S.C. § 1905 and 5 U.S.C. § 552(b)(4); and 3) that jurisdiction of the district court may be invoked under 28 U.S.C. § 1331.
In such an action brought to review an agency decision to disclose information assertedly exempt under (b)(4), this Court is not limited to the record before the agency nor is the standard of review limited to arbitrariness.
It would be an incredible rule that a legislative prohibition such as § 1905, fixing limits on executive action for the benefit of the plaintiffs, is to be construed and applied by the executive, with only a right of review for arbitrariness on the part of those for whose benefit the statutes were enacted. This would be tantamount to committing the execution of such law to "the self-restraint of the executive branch" itself, . . .
. . . . .
To repeat, when the issue is whether certain information is without prohibition *1232 of disclosure, whether because "confidential" within both § 1905 and Exemption 4 or because of national security privilege, it is for the court itself to determine "whether the circumstances are appropriate for the claim" and not the executive department concerned and "the courts must be satisfied from all the evidence and circumstances," that the information is within or without the prohibition or privilege. This is so, because "[j]udicial control over the evidence in [such] a case cannot be abdicated to the caprice of executive officers." United States v. Reynolds (1953), 345 U.S. 1, at 8-10, 73 S.Ct. 528, 532, 97 L.Ed. 727.
Westinghouse Electric Corp. v. Schlesinger, supra at 1215.
In summary, plaintiff as a supplier of information to an agency has a right to bring a "reverse" freedom of information act case in federal district court under 18 U.S.C. § 1905, 5 U.S.C. § 552(b)(4), and 28 U.S.C. § 1331[2] and that an action so brought results in a full trial at which the Court determines de novo the plaintiff's right to have the information ordered withheld.
The Court is aware of the Third Circuit's decision in Chrysler Corp. v. Schlesinger, 565 F.2d 1172 (1977) which holds that there is no implied cause of action under 5 U.S.C. § 552(b)(4) or 18 U.S.C. § 1905 and that in reviewing agency action a trial de novo is not authorized, the only relief available being that provided under the Administrative Procedure Act, 5 U.S.C. §§ 701-703. For the reasons amply reviewed by the Fourth Circuit in Westinghouse Electric Corp. v. Schlesinger, supra, we adhere to our holding that a supplier of confidential information who may be seriously harmed by its disclosure has the right to sue in a federal district court to prevent such disclosure and that this important right is assertable in a trial de novo, not merely in a limited review of agency discretion. Even if this Court were in less substantial agreement with our own Court of Appeals' construction of the FOIA, so recent a decision as Westinghouse v. Schlesinger, supra, on precisely the same points covered by the Third Circuit in Chrysler Corp. v. Schlesinger, binds us under the principle of controlling decision to follow the Fourth Circuit rather than the Third. Doe v. Charleston Area Medical Center, Inc., 529 F.2d 638, 642 (4th Cir. 1975).
This Court does not interpret the 1976 amendment of 5 U.S.C. § 552(b)(3)[3] as vitiating the Fourth Circuit's rationale in Westinghouse v. Schlesinger at least insofar as 18 U.S.C. § 1905 and 5 U.S.C. § 552(b)(4) are concerned. The change in language does serve to negate the effect of the holding in FAA Administrator v. Robertson, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), where the Supreme Court had decided that § 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504 (providing that upon written objection the FAA Board or Administrator may in its discretion withhold information otherwise releasable) was a statute specifically exempting information from disclosure under the FOIA. Apparently, the 1976 change in language also was intended to remove 18 U.S.C. § 1905 from the ambit of the § 552(b)(3) exemption.[4] Assuming that the statutory language successfully effectuates Congress' intent, it necessarily follows that one of the *1233 grounds for the Fourth Circuit's decision in Westinghouse Electric Corp. v. Schlesinger, viz., that 18 U.S.C. § 1905 is a statute specifically exempting information from disclosure under (b)(3), has been legislatively removed. See, Crown Central Petroleum Corp. v. Kleppe, 424 F.Supp. 744, 752-53 (D.Md.1976). However, the other bases of the Court of Appeals' decision, namely, that the (b)(4) exemption both by itself and in tandem with 18 U.S.C. § 1905[5] requires non-disclosure of information which if released would be likely to cause substantial harm to the competitive position of the supplier, remain, in this Court's opinion, valid.

III.
Plaintiff has also asserted as a compelling reason for non-disclosure the (b)(6) exemption of § 552, which provides:
(b) This section does not apply to matters that are 
. . . . .
(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
The test for disclosability under the (b)(6) exemption is substantially different from that under (b)(4). The latter involves a determination of whether the information in question is a trade secret, privileged, or is confidential under the criteria set forth in National Parks and Conservation Association v. Morton, supra. If it qualifies as one of these, the data may not be disclosed. On the other hand, information contained in personnel, medical and similar files disclosure of which would constitute an invasion of personal privacy, nonetheless must be disclosed unless the invasion of privacy thus entailed would be clearly unwarranted. The language of this exemption inevitably implies the exercise of agency discretion and the ". . . balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act `to open agency action to the light of public scrutiny.'" Department of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976).
This being the case, the disclosure of information in personnel, medical and similar files which invades personal privacy is required under the FOIA provided that under all the facts and circumstances the invasion of personal privacy is not unwarranted. Yet, the same information that should be released under the criteria of the (b)(6) exemption may be non-disclosable under (b)(4) and 18 U.S.C. § 1905 as likely to cause substantial harm to the employer-supplier's competitive position.
In the case at bar, the DLA agreed to delete from the disputed information the names, salaries, Social Security Numbers and other personal data pertaining to Westinghouse employees. Despite these deletions, the Court finds the disclosure of the data in those sections pertaining to promotability as well to departments having highly trained personnel, by supplying both the competitors and employees of plaintiff with information likely to harm Westinghouse, may be enjoined under (b)(4). Therefore, although the Court feels that such information may very well be disclosable after a balancing of all the competing elements pursuant to the (b)(6) exemption as construed *1234 in Department of the Air Force v. Rose, supra, such a determination would be academic in view of the Court's finding that the same information is non-disclosable under (b)(4).

IV.
Plaintiffs have advanced several other theories to support non-disclosure but as they lack merit, the Court will deal with them in succession without extended discussion.
First, plaintiff has asserted that 18 U.S.C. § 1905 is a statute specifically exempting the information here involved from disclosure under § 552(b)(3). In light of the 1976 amendment to the FOIA, this position is no longer tenable. See, Central Petroleum v. Kleppe, supra at 752-53.
Plaintiff also argues that § 709(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(e)[6] and § 423 of the Federal Report Act of 1942, 44 U.S.C. § 3508(a)[7] are statutes specifically exempting information from disclosure within the meaning of § 552(b)(3) of the FOIA. However, 42 U.S.C. § 2000e-8(e) has been held to be a statute outside the ambit of the (b)(3) exemption, Westinghouse Electric Corp. v. Schlesinger, supra at 1199, as has 44 U.S.C. § 3508, Sears Roebuck & Co. v. General Services Administration, 166 U.S.App.D.C. 194, 509 F.2d 527, 529 (1974). The decision in Westinghouse Electric Corp. v. Schlesinger, is clearly binding on this Court and the holding in Sears Roebuck, supra, on virtually identical facts is persuasive and we consider it dispositive of the issue here.
Westinghouse, additionally sought to have the disclosure regulations of the Department of Labor (29 C.F.R. § 70.1 et seq.), the DLA (32 C.F.R. § 1285.1 et seq.) and the OFCCP (41 C.F.R. § 60-40.1 et seq.) declared unconstitutional per se or as applied to plaintiff on the ground that these regulations failed to afford notice and adequate opportunity to be heard to suppliers of confidential information who felt threatened by a proposed disclosure. Plaintiff made the constitutional claim in its complaint but in more recent papers has not urged this argument and in fact, it has little merit. Both the DLA[8] and OFCCP[9] *1235 regulations provide for notice of impending disclosure to a supplier of information and an opportunity to object. While the Department of Labor regulations cited above do not in themselves provide such a notice and objection procedure, the OFCCP is a branch of the Department of Labor and its guidelines are expressly intended to supplement the policy and regulations of the Department of Labor. See 41 C.F.R. § 60-40.1. The due process argument urged here by the plaintiff has been examined and properly rejected in the recent past in the course of other "reverse" Freedom of Information Act suits. See, e. g., Chrysler Corp. v. Schlesinger, 412 F.Supp. 171, 178-79 (D.Del.1976), vacated and remanded on other grounds, 565 F.2d 1172 (3d Cir. 1977); Metropolitan Life Insurance Co. v. Usery, 426 F.Supp. 150, 172 (D.D.C.1976). This Court likewise finds no merit to this argument and denies plaintiff relief on this ground.

V.
Having held that certain of the documents here in dispute may not be disclosed in consequence of 5 U.S.C. § 552(b)(4) both in its own right and in combination with 18 U.S.C. § 1905, it remains for the Court to detail precisely what portions of those documents are not disclosable. That only such information which clearly would be likely to cause substantial harm to the competitive position of the plaintiff be withheld, is mandated by the whole thrust of the FOIA and specifically that part of § 552(b) which provides:
Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.
In compliance with the principles of maximum permissible disclosure as alluded to above and elaborated in Department of the Air Force v. Rose, supra, the Court has thoroughly reviewed in camera all the information intended for release and holds all the information in dispute may be released with the exception of the following which the Court enjoins the named defendants, their successors, agents, servants and all employees and others acting in concert with or for them from disclosing.
The information ORDERED NOT to be disclosed is:
[Specific references to exhibits omitted at the suggestion of the court. Ed.]
NOTES
[1] This statute provides:

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.
[2] Plaintiff has also sought to ground subject matter jurisdiction in § 702 of the Administrative Procedure Act. Such a basis for federal jurisdiction is now foreclosed by the Supreme Court's holding in Califano v. Sanders, 430 U.S. 980, 97 S.Ct. 980, 51 L.Ed. 192 (1977).
[3] The 1976 amendment added to the exemption's language as follows (new language underlined):

(b) This section does not apply to matters that are 
. . . . .
(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.
[4] See, H.R.Rep.No.94-880  Part I, 2d Sess. reprinted in [1976] U.S.Code Cong. & Admin. News p. 2191.
[5] Since the (b)(4) exemption leaves trade secrets, and privileged or confidential commercial or financial information outside the purview of the FOIA, such data in Government hands is fully subject to any existing law controlling its disclosability. One such law is 18 U.S.C. § 1905. The scope of the (b)(4) exemption and § 1905 has been held to be coextensive. See Westinghouse Electric Corp. v. Schlesinger, supra at 1203-04 n. 38; Charles River Park "A", Inc. v. H & U. D. [171 U.S.App.D.C. 286], 519 F.2d 935, 941-42. This Court fails to follow the reasoning of the Third Circuit in Chrysler Corp. v. Schlesinger, supra at 24-25, which transforms 5 U.S.C. § 301, a general governmental "housekeeping" statute, into an independent grant of authority to disclose information. This reading of 5 U.S.C. § 301 completely voids the restraints imposed by 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905 and we find such a construction does not accord with the language of 5 U.S.C. § 301 and is totally out of consonance with its long history. Cf. Charles River Park "A", Inc. v. H & U. D., supra at 942-43.
[6] The statute provides:

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatsoever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subsection involving such information. Any officer or employee who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.
[7] The statute provides:

If information obtained in confidence by a Federal agency is released by that agency to another Federal agency, all the provisions of law including penalties which relate to the unlawful disclosure of information apply to the officers and employees of the agency to which information is released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information. The officers and employees of the agency to which the information is released, in addition, shall be subject to the same provision of law, including penalties, relating to the unlawful disclosure of information as if the information had been collected directly by that agency.
[8] 32 C.F.R. § 1285.7(b)(7) provides:

When a request is received for records which were obtained by DSA [now DLA] from a non-U. S. government source, or contain information obtained by DSA from a non-U. S. government source and because of the source and the nature of the records or information, there is reason to believe that the source of the information or records may object to release and may have an enforceable right to prevent release, prompt notification of intended release shall be given to the source. Release will normally be withheld until the source has a reasonable time to comment on the proposed release. Comments received will be considered in determining the releasability of the document. When the source advises that it is seeking a restraining order or other court action to prevent release, release will normally not be made pending the outcome of the court action.
[9] 41 C.F.R. § 60-60.4(d) provides in pertinent part:

Information obtained from a contractor under Subpart B will be subject to the public inspection and copying provisions of the Freedom of Information Act, 5 U.S.C. § 552. Contractors should identify any information which they believe is not subject to disclosure under 5 U.S.C. § 552, and should specify the reasons why such information is not disclosable. The Contract Compliance Officer will consider the contractor's claim and make a determination, within 10 days, as to whether the material in question is exempt from disclosure. The Contract Compliance Officer will inform the contractor of such a determination. The contractor may appeal that ruling to the Director of OFCC within 10 days. The Director of OFCC shall make a final determination within 10 days of the filing of the appeal.