**NATIONWIDE MUTUAL INSURANCE COMPANY**

v.

**Everett FRIEDMAN et al.**

**Civ. No. Y–77–1200.**

United States District Court,
D. Maryland.

May 26, 1978.

James Garland, Baltimore, Md., Jeffrey S. Goldman, Chicago, Ill., for plaintiff.

Thomas W. Hussey, Washington, D. C., Donald H. Feige, Baltimore, Md., for defendants.

JOSEPH H. YOUNG, District Judge:

By an amended complaint, filed September 21, 1977, Nationwide Mutual Insurance Company (Nationwide) requests declaratory and injunctive relief against defendants, officials of the Social Security Administration (SSA), Department of Health, Education and Welfare (HEW) and the Department of Labor. Plaintiff seeks to prevent public disclosure of information submitted to the Social Security Administration, concerning the religious composition of its work force at middle and upper management levels. The American Jewish Committee and the Anti-Defamation League of B'nai B'rith requested the data, and SSA determined that, with certain deletions, disclosure was mandatory, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. This type of case is termed a "reverse FOIA" claim because the agency has determined that information should be disclosed, and the submitter objects to disclosure.

Motions for summary judgment have been filed by plaintiff and defendants. Defendants contend that the information, except for matters already deleted, does not fall within any statutory exemption from mandatory disclosure under the FOIA. Plaintiff contends that the information comes within various exemptions of § 552(b), that SSA therefore has discretion to release or withhold it, and that, under the circumstances of this case, SSA was required to exercise its discretion in favor of nondisclosure. In the alternative, plaintiff asks that additional deletions be made from the material.

The defendants' motion for summary judgment will be granted. Except for one additional deletion, the FOIA requires disclosure of the material. Plaintiffs' motion for summary judgment is denied.

## FACTS

As a government contractor, plaintiff is required to comply with Executive Order 11246, by hiring employees without regard to race, color, religion, sex or national origin, and taking affirmative action to eliminate employment discrimination. Responsibility for enforcement of the Order is centered in the Director of the Office of Federal Contract Compliance (OFCC), who, in turn, designates various federal agencies as "compliance agencies" to assure contractor compliance within certain geographical or industrial areas. The compliance agency for plaintiff is the Social Security Administration.

Plaintiff is required to file an annual Employer Information Report (EEO–1), listing the number of women and minority group members in the work force, and to prepare an Affirmative Action Program (AAP). The AAP must contain a "Utilization Analysis," identifying the job level of minority personnel, and establishing goals and schedules for improving opportunities for minorities.

The compliance agency examines the EEO–1 and AAP, conducts on site inspections, and formulates a compliance review report (CPR). The CPR includes the information given by the contractor, an evaluation, and recommendation for sanctions or corrective measures. The compliance agency also investigates complaints that a contractor is violating the Executive Order, and prepares reports of such investigations. *See* 41 C.F.R. 60–1.1 *et seq.*

In 1969, in response to general complaints made by several religious-oriented community organizations, including the American Jewish Committee and the Anti-Defamation League, the Secretary of Labor initiated a pilot project regarding religious discrimination in the insurance industry. The project was assigned to the Insurance Compliance Staff of SSA. Dr. Barry T. Whitman, assigned to the project as an Equal Opportunity Specialist, characterizes the undertaking as a "special equal opportunity compliance review project." Form SSA–1776, Religious and Ethno-Religious Affiliation Questionnaire was developed by SSA, and completed by plaintiff and other submitters. The questionnaire and the narrative report by the specialist, after an on site review, are the documents at issue in the present case.

Form 1776 contains the following information: a general summation of existing practices to promote equal opportunity without regard to religion; a description of the company's executive and middle management positions; a utilization analysis of the Jews and Catholics in these positions; and a general statement of any plans and/or objectives to promote full and equal employment opportunity without regard to religion in the future. The form is signed by a Nationwide official; other than that, it does not contain names or, with one exception, individualized comments. The specialist's narrative report includes the following information: a list of Jewish and Catholic community resources; a report of attitudes of key company officials; a discussion of the Form 1776; a statement of the method of religious identification used by plaintiff for the study; a description of some local religious-community organizations' programs for promoting equal employment generally; a summary of the questionnaire information; and a synopsis of the goals and commitments made by plaintiff. All names of Nationwide officials and employees have been deleted from the report. Thus, the report provides a summation of attitudes, without attribution to particular individuals.

The parties agree that the information was furnished upon an understanding of confidentiality. The questionnaire itself states that information "will be used only in connection with the administration of Executive Order 11246 and the Civil Rights Act of 1964 and will not be revealed to any outside person or organization."

The affidavit of Dr. Whitman indicates that this pilot project differed from other compliance activities stating:

The contract compliance approach to possible employment discrimination based on religion differed from other compliance activities. First, compliance efforts concentrated on top corporate officials because of the sensitive policy implications of this issue and because these officials would be in the most favorable position to furnish accurate information on the representation of Catholics and Jews in executive and middle management positions. Second, emphasis was placed on a consultative role, and assistance was provided Federal contractors in the completion of the Form SSA–1776. A third activity was directed toward fostering a concept under which the contractor would take the initiative in developing a positive program. The Form SSA–1776 was used as a tool to focus management's attention on the problems and suggest steps to overcome them.

Affidavit of Dr. Whitman at page 2.

### ISSUES

Determination of whether the above information will be disclosed turns on the application of the FOIA to the facts of this case. The key question is whether this is a situation where the FOIA requires disclosure or leaves the agency some discretion in making the choice. If the decision was discretionary, rather than mandatory, it must be determined whether SSA was required to reach the opposite conclusion under the facts of this case.

■ The basic purpose of Congress in enacting the FOIA was to promote broad public access to information within the control of the government. *E. g., Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Under the terms of the Act, the nine exemptions of subsection (b) are the sole and exclusive basis for an agency to withhold information or limit the availability of records to the public, 5 U.S.C. § 552(c). If the information in this case does not come within an exemp-

tion, SSA has no discretion and must provide the documents upon request, and no issue of the extent or proper exercise of agency discretion will arise. In *Metropolitan Life Insurance Co. v. Usery,* 426 F.Supp. 150 (D.D.C.1976), the court stated:

In a reverse-FOIA case the threshold question is whether the documents sought are subject to mandatory disclosure or fall within an exemption to the Act. If the documents sought are subject to mandatory disclosure, the lawsuit is at an end.

*Id.* at 156.

■ While the exemptions show the Congressional intent to balance important needs for confidentiality against the public interest in access to information, they must be narrowly construed in accord with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Unless one of the nine exemptions applies, "virtually every document generated by an agency is available to the public in one form or another." *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975).

In the instant case, the original agency decision shows that SSA has consistently seen itself as complying with the statutory mandate, rather than exercising discretion. The letter of the Compliance Staff Chief, dated July 15, 1977, setting forth the agency position, states that FOIA "requires" disclosure and that SSA "is constrained" to release the documents. The affidavit of Paul A. Schuette, Director of the Office of Information at SSA, indicates that the documents were reviewed line by line, and that the Agency exercised its discretion in favor of deletion, rather than release, whenever information came within the ambit of a statutory exemption.

### SCOPE OF REVIEW

■ The Court will determine *de novo* whether exemption 3, 5, 6 or 7(C) or (D) of

§ 552(b) is applicable to the facts of this case.[1] While the FOIA explicitly gives requesters a cause of action to compel disclosure, no express statutory provision gives submitters an FOIA cause of action to prevent disclosure, and there is a division of authority as to whether submitters have an implied cause of action. Because this circuit has held that submitters have an implied right of action under the FOIA itself, *de novo* review of all issues is provided. *Westinghouse Electric Corp. v. Schlesinger,* 542 F.2d 1190, 1213 (4th Cir. 1976).

When documents are exempt from mandatory disclosure, those courts which have found no implied cause of action have held that the Agency's choice to release data may be reversed only for abuse of discretion, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq. E. G., Chrysler Corp. v. Schlesinger,* 565 F.2d 1172, 1175 (3rd Cir. 1977); *Charles River Park "A", Inc. v. Department of Housing and Urban Development,* 519 F.2d 935, 941–42 (D.C.Cir.1975).

However, even courts taking the latter approach determine whether an exemption applies *de novo,* rather than reviewing strictly within the confines of the agency record. This approach is well expressed in *Charles River Park "A", supra,* where the court stated:

A plaintiff in a suit such as this is obviously entitled to no relief if the government could be forced to disclose the information it wishes to reveal in a suit under the FOIA. Thus, the district court should hold a hearing to determine whether the information involved here would have been exempt just as it would if a suit had been brought under the FOIA to compel disclosure. See 5 U.S.C. § 552(b)(3) . . . In holding this hearing the district court is not reviewing agency action; it is making a threshold determination whether the plaintiff has any cause of action at all.

519 F.2d at 940–41, n. 4.

## EXEMPTION 3

Under 552(b)(3), the statutory disclosure requirements do not apply to matters that are:

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . .

Nationwide contends that the (b)(3) exemption precludes disclosure through two separate statutes; namely, § 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(e); and the Trade Secrets Act, 18 U.S.C. § 1905.

### A. 42 U.S.C. § 2000e–8(e)

Section 8(e) provides that:

It shall be unlawful for any *officer or employee of the* (Equal Opportunity) *Commission* to make public in any manner whatever *any information obtained by the Commission* pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. (Emphasis added)

■ By its terms this section applies only to EEOC employees and only to information obtained by that agency on its own authority. However, contractors, who submit identical information in the form of EEO–1 reports to both EEOC and a compliance agency through a Joint Reporting Committee (JRC), argue on policy grounds against mandating release by one agency, when it is forbidden by the other. While this argument is not without merit,[2] by far the

---

1. The amended complaint alleges that exemption 4 might also apply. However, in the motion for summary judgment plaintiff appears to have abandoned the exemption 4 claim and it will not be considered.

2. *Cf. Chamber of Commerce of the United States v. Legal Aid Society of Alameda County,* 423 U.S. 1309, 96 S.Ct. 5, 46 L.Ed.2d 14 (1975), where Justice Douglas refused to stay an order for production of EEO–1s by the compliance agency, but indicated that the EEOC policy of confidentiality for such information should not be "lightly circumvented."

greater weight of authority holds that the terms of § 709(e) make it inapplicable to OFCC compliance agencies, such as SSA. The government's anti-discrimination efforts with regard to government contractors have a basis and orientation different from the EEOC. The JRC which collects and distributes data concerning employment discrimination to various enforcement authorities is not an agent of EEOC. *E. g., Chrysler Corp. v. Schlesinger, supra,* at 1188–89; *Westinghouse v. Schlesinger, supra,* at 1199; *Sears Roebuck and Company v. General Services Administration,* 166 U.S.App.D.C. 194, 199, 509 F.2d 527, 529 (1974).

If 709(e) does not apply to EEO–1 Reports in the hands of the compliance agency, there is even less reason to apply it to the documents in this case which, unlike EEO–1s, are part of a special OFCC project, rather than routine submissions to both EEOC and the compliance agency.

### B. 18 U.S.C. § 1905

■ 18 U.S.C. § 1905 prohibits disclosure of trade secrets and other commercial and financial information, including "confidential statistical data," unless otherwise "authorized by law." Assuming *arguendo* that the documents at issue here could fall within this range of information, § 1905 does not qualify as an exemption 3 statute.

Until the 1976 amendments, the § 552(b)(3) exemption stated that the FOIA mandatory disclosure did not apply to matters "specifically exempted from disclosure by statute." In *Federal Aviation Administration v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), the Supreme Court held that a provision of the Federal Aviation Act (FAA), which gave the administrator blanket discretion to withhold information, was an exemption 3 statute. The Court believed that Congress, through exemption 3, intended virtually all pre-FOIA nondisclosure statutes to remain operative.

In the 1976 amendments, Congress amended exemption 3 for the specific purpose of reversing the expansive interpretation in the *Robertson* case. The amended version of (b)(3), set forth above, clearly narrows the number of statutes which fall within its terms.

Plaintiff argues 'that § 1905, unlike the statute in *Robertson* is a nondiscretionary statute; that it enumerates "particular types of matters to be withheld"; and that it is, therefore, an exemption 3 statute, even after the amendments.

This argument cannot succeed in view of the overall Congressional purpose in passing the amendment, and the basic principle that disclosure, not secrecy, is the theme of the FOIA. The broad categories of information covered by § 1905 would create a wide-ranging exception to the FOIA. This was precisely the situation Congress intended to change by passing the 1976 amendment to subsection (3). Congress did not intend to include statutes as broad in scope as § 1905, when it provided that exemption 3 statutes would include those enumerating "particular types of matters to be withheld."

Statutes which have been found within exemption 3 since the amendments, on the basis that they state particular matters, have been far narrower than 18 U.S.C. § 1905. The National Security Act's prohibition of disclosure of the names, titles, salaries and number of employees of NSA falls within the new (b)(3) section. *Founding Church of Scientology of Washington, Inc. v. National Security Agency,* 434 F.Supp. 632 (D.D.C.1977). The mandate to the Census Bureau to hold its data confidential, for purposes other than the statistical purpose for which it is supplied, is also an exemption 3 statute. *Seymour v. Barabba,* 182 U.S.App.D.C. 185, 559 F.2d 806 (1977).

The legislative history of the "Government in the Sunshine Act" shows a definite intent to remove § 1905 as a basis for nondisclosure, except where it coincides with another FOIA exemption category.

Under the amendment, the provision of the Federal Aviation Act of 1958 that was the subject of *Robertson,* and which affords the FAA Administrator *cart blanche* [sic] to withhold any information he pleases, would not come within exemption 3. Similarly, the Trade Secrets Act, 18 U.S.C. § 1905, which relates only to the disclosure of information where disclosure is "not authorized by law," would not permit the withholding of information otherwise required to be disclosed by the Freedom of Information Act, since the disclosure is there authorized by law. Thus, for example, if material did not come within the broad trade secrets exemption contained in the Freedom of Information Act, section 1905 would not justify withholding; on the other hand, if material is within the trade secrets exemption of the Freedom of Information Act and therefore subject to disclosure if the agency determines that disclosure is in the public interest, section 1905 must be considered to ascertain whether the agency is forbidden from disclosing the information.

U.S.Code Congressional and Administrative News, 1976, p. 2205.

The above excerpt also refers to *Charles River Park "A",* supra, where the court stated:

> 5 U.S.C. § 552(b), does not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption.

519 F.2d at 941, n. 7.

Contrary to plaintiff's suggestion, changes in the final version of the bill do not make this statement inapplicable.

Although the Fourth Circuit has held § 1905 to be within exemption 3, *Westinghouse Electric Corp. v. Schlesinger, supra,* this decision was prior to the change in the provision, and relied heavily on the reasoning in *Robertson.* Two district court decisions in this circuit have concluded that *Westinghouse* is overruled on this point by the "Government in the Sunshine Act."[3] *Westinghouse Electric Corp. v. Brown,* 443 F.Supp. 1225, 1234 (E.D.Va.1977); *Crown Central Petroleum Corp. v. Kleppe,* 424 F.Supp. 744, 752–53 (D.Md.1976). This Court agrees.

Accordingly, plaintiff cannot argue against mandatory disclosure of the documents on the basis of 18 U.S.C. § 1905, through § 552(b)(3).

## EXEMPTION 6

Section (b)(6) authorizes nondisclosure of:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; . . .

The documents in the instant case can only qualify for exemption as "similar files." This provision is aimed at preventing access to personal data, and the basic test for a "similar" file is whether it "implicates similar privacy values." *Department of the Air Force v. Rose,* 425 U.S. 352, 376, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Exemption 6 requires a balancing of possible privacy interests against the public interest in disclosure. Congress intended to distinguish between generalized, summary information and individual data, as is indicated by portions of the legislative history, cited in *Air Force v. Rose, supra* :

> For the Senate and House Reports on the bill enacted in 1966 noted specifically that Health, Education, and Welfare files, Selective Service files, or Veterans' Administration files, which as the Agency here recognizes were clearly included within the congressional conception of "personnel files," were nevertheless intended to be subject to mandatory disclosure in redacted form if privacy could be sufficiently protected. As the House Report states, H.R.Rep. No. 1497, p. 11: "The exemption is also intended to cover detailed Government records on an indi-

---

**3.** This Court does not suggest that *Westinghouse* is overruled in any other respect, including other holdings with respect to 1905.

vidual which can be identified as applying to that individual and not the facts concerning the award of a pension or benefit or the compilation of unidentified statistical information from personal records." Similarly, the Senate Report emphasized, S.Rep. No. 813, p. 9, "For example, health, welfare, and selective service records are highly personal to the person involved, yet facts concerning the award of a pension or benefit should be disclosed to the public."

*Id.* at 375–76, 96 S.Ct. at 1605–06.

■ Applying these criteria to the instant case, it is clear that with one exception, to be stated below, exemption 6 does not authorize nondisclosure. While the subjects of religion and ethnicity may well come within (b)(6) in some circumstances— *i. e.,* where the data involves detailed records about individuals—the documents here reveal no such information. The questionnaire gives numerical summaries, and all names have been deleted, except for that of the officer submitting it.

Plaintiff's own allegations do not claim that the data reveals religious or ethnic information on an individualized, particularized basis. The main thrust of plaintiff's argument is that (b)(6) should protect the company officers and employees who participated in the review from being identified. In the memorandum supporting the motion for summary judgment, plaintiff states:

> Portions of the memorandum could be attributed to specific people by company insiders who would be able to discern from the descriptive data left in the document who made which statement . . . Therefore, the (b)(6) exemption may apply to portions of the data even though such data would not aid the greater public in identifying the individuals supplying the data.

Plaintiff's memorandum at 15. These allegations, even if proven, would not constitute a "clearly unwarranted invasion of personal privacy." As the Supreme Court stated in *Rose,*

> To be sure, redaction cannot eliminate all risks of identifiability, as any human approximation risks some degree of imperfection, and the consequences of exposure of identity can admittedly be severe. But redaction is a familiar technique in other contexts and exemptions to disclose under the Act were intended to be practical workable concepts. . . . Moreover, we repeat, Exemption 6 does not protect against disclosure every incidental invasion of privacy—only such disclosures as constitute "clearly unwarranted" invasions of personal privacy.

425 U.S. at 381–82, 96 S.Ct. at 1608–09. The *Rose* case involved disciplinary summaries of Air Force cadets. The information was considerably more detailed than that in the instant case, and recognition carried far graver potential consequences. Since such data was released because the public interest in standards for the military outweighed the privacy interest, disclosure is mandated in the instant case, where far less serious private interests are balanced against the strong public interest in promoting equal employment opportunity. Even if an identification is made, it would only identify an official as having prepared the documents, and assessed the data therein contained. Under the facts of this case, such an association is simply not the type of personal exposure protected by exemption 6.

Plaintiff expresses fear that the attitudes of company officers will be misconstrued by those who read the documents. This is an untenable, unworkable standard for determining unwarranted invasions of privacy, and cannot be adopted.[4] Similarly, the fact that much of the data is based on estimate and approximation is not a basis for nondisclosure. The material identifies the method used in gathering it.

---

**4.** Conditioning a right to otherwise available information on a showing that it would not be misunderstood would involve serious First Amendment problems. The Court need not reach such issues since the statute clearly does not contemplate any such principle as a basis for nondisclosure.

Plaintiff's argument on various points equates subjectivity with privacy. The equation is not valid. Narrative comments, which inherently introduce an element of subjectivity, are not, for that reason, exempt. *Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 167.

■ The second paragraph of section 6C on page 6 of the compliance review report is that one additional portion of the material which must be deleted. Even with the name excised, the individual would be highly identifiable. More importantly, the individual would be identified, not as a writer of the report, but in terms of some personal matters. Deletion of this section will not in any way impair the usefulness of the material to those requesting it. With this one exception, the public interest in information to evaluate the joint efforts of contractors and the Government in eliminating discrimination outweighs the limited private interest alleged in this case.

## EXEMPTION 5

Section 5 of § 552(b) exempts from mandatory disclosure:

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

■ Congress wished to guard the confidentiality of advisory opinions and preserve the opportunity for full communication among Government employees. Exemption 5 is to be construed as narrowly as is consistent with the performance of government work, and documents should be available unless disclosure would interfere with the consultative functions it was designed to protect. *Environmental Protection Agency v. Mink,* 410 U.S. 73, 86–87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

■ Exemption 5 focuses on disclosure of interpretations which embody the Agency's policy and the withholding of papers which reflect the Agency's resolution of a policy. *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 153, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). *See* also *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

In accordance with the purposes of the FOIA, factual matter remains available despite its inclusion in a memorandum of law and policy. In *Environmental Protection Agency v. Mink, supra,* the Supreme Court stated:

It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, common-sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents.

410 U.S. at 91, 93 S.Ct. at 838.

■ After reviewing the material at issue, the Court is satisfied that the agency's choice of which data to delete and which to make available is consistent with the principles of exemption 5. Exemption 5 is designed primarily to protect agency functioning, and the agency, not a submitter, has the best understanding of instances where disclosure might impair its ability to freely make policy. Without deciding whether a third party could ever successfully assert exemption 5, it is clear that an agency's judgment *in favor of* disclosure is entitled to great weight, and is not easily overborne. Under the facts of this case, there is no basis to force upon the agency a protection for memoranda, which, in its own judgment, is not appropriate.

In this connection, it is worth noting that OFCC takes the position that EEO–1 Reports and AAP's are generally appropriate for disclosure, except for highly specific and sensitive information in the AAP's. 41 C.F.R. § 60–40.4; § 60–40.3(a). The information here is similar, but far less detailed or comprehensive, than the reports as to which compliance agencies routinely find no exemption 5 interest.

In short, plaintiff cannot avoid mandatory disclosure through exemption 5.

## EXEMPTION 7

This exemption from mandatory disclosure is available for:

(7) *investigatory* records compiled for *law enforcement purposes,* but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;
 . . . (Emphasis added).

This section is intended to protect the Government's interest in law enforcement and adjudication. It has been held that exemption 7 gives private parties "no interest of (their) own in non-disclosure." *Sears, Roebuck & Company v. General Services Administration,* 384 F.Supp. 996, 1004 (D.D.C.1974). However, even if plaintiff was allowed to claim an interest under this subsection, disclosure would be mandatory because the documents are not "investigatory files" or for "law enforcement" purposes.

Records compiled as part of monitoring procedures are distinguishable from records which result from investigation of specifically alleged illegal acts. *Sears, Roebuck & Co. v. General Services Administration,* 166 U.S.App.D.C. 194, 199–200, 509 F.2d 527, 529–30 (1974). In that case, EEO–1's and AAP's were found outside the definition of "investigatory" records. Despite some distinction, the material in the instant case is more like, than unlike, EEO–1's and AAP's for exemption 7 purposes.

As stated above, defendant characterizes the project which generated the documents as consultative and cooperative. Contractors were assisted in completing Form SSA–1776. Emphasis was placed on encouraging the contractor to take the initiative in developing positive programs. The insurance industry was being surveyed, rather than one company being targeted by specific complaints. A purpose of Form SSA–1776 was to "focus management's attention on the problems and *suggest* steps to overcome them." (Affidavit of Dr. Barry Whitman at p. 2, emphasis added.)

 This description of the project, which is essentially uncontroverted, sets forth a monitoring procedure, not a law enforcement investigation. An emphasis on voluntariness is a strong indicator that material should not be construed as "investigatory files." *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S.App. 368, 370, 502 F.2d 370, 372 (1974). Even when a process of general inquiry "departs from the routine and focuses with special intensity upon a particular party," the routine data is still accessible to the public. *Id.* 163 U.S.App.D.C. at 371–72, 502 F.2d at 373–74.

While almost any information can, in some sense, be called law enforcement material, this is not the meaning of exemption 7. As stated in *Rural Housing Alliance v. United States Department of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (1974):

. . . most information sought by the Government about its own operations is for the purpose ultimately of determining whether such operations comport with applicable law, and thus is "for law enforcement purposes." Any internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees. But if this broad interpretation is correct, then the exemption swallows up the Act; . . .

*Id.* 162 U.S.App.D.C. at 130, at 81.

In summary, the *in camera* review of the materials and consideration of all relevant factors demonstrates that there is no basis to support plaintiff's contention related to investigatory files for law enforcement purposes, within the meaning of exemption 7.

Since disclosure by SSA is mandatory, the fact that the information was obtained on a confidential basis is ineffective to prevent release. *E. g., Westinghouse v. Schlesinger, supra; Robles v. Environmental Protection Agency,* 484 F.2d 843, 846 (4th Cir. 1973).

Accordingly, it is this 26th day of May, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the second paragraph of section 6C on page 6 of the compliance review report be deleted.

2. That the defendants' motion for summary judgment be, and the same is, hereby GRANTED; and

3. That, except for the deletion ordered above, the plaintiff's motion for summary judgment be, and the same is, hereby DENIED.